IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01874-RM-KAS

DAWAUNE ELLIS, II,

      Plaintiff,

v.

DENVER COUNTY OF CITY,
RICHARD ANDERSON,
CARLOS HERNANDEZ,
ELIAS DIGGINS,
FRANCISCO GONZALES,
JOSEPH BURGOS,
SPENCER HASWELL,
RYAN SEWITSKY, and
SEVERAL UNKNOWN OFFICERS,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim and Lack of Compliance with Court Orders** [#82][1] (the "Motion"). Plaintiff filed a Response [#85] in opposition to the Motion [#82], Defendant filed a Reply [#87], and Plaintiff filed two Surreplies [#88,89]. The Motion [#82] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#83]. The

---

[1] "[#82]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#82] be **GRANTED**.

## I. Background[2]

Plaintiff proceeds in this matter as a pro se litigant.[3] On April 11, 2018, Plaintiff was taken into custody and remained, at all times relevant to this litigation, a pretrial detainee at the Denver Detention Center of the Denver Sheriff's Department. *Fifth Am. Compl.* [#81] at 6-10. He states that, due to his mental health issues, he was assaulted on several occasions by Defendants Richard Anderson ("Anderson"), Carlos Hernandez ("Hernandez"), Francisco Gonzalez ("Gonzalez"), Joseph Burgos ("Burgos"), Spencer Haswell ("Haswell"), and several other unidentified officers. *Id.* at 6.

On June 21, 2019, Defendants Anderson and Hernandez approached Plaintiff's cell. *Id.* They tried to open the cell door but could not because Plaintiff had blocked the door with an object. *Id.* This "upset" these Defendants, and they allegedly "planned to assault" him without following appropriate procedures, i.e., turning on the lights in the cell, organizing a team, and coming into the cell with a camera. *Id.* Plaintiff states that, when

---

[2] To resolve the Motion [#82], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Fifth Amended Complaint [#81]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, to the extent that Plaintiff provides additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

[3] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

he realized they were trying to enter the cell, he "took the object with the sheet off the door." *Id.* at 7. When the two entered his cell, they overpowered him, held him against his bed, and allegedly proceeded to punch him in the face. *Id.* Defendant Hernandez also punched Plaintiff's body. *Id.*

On February 17, 2020, Plaintiff states that he was assaulted by Defendants Burgos and Haswell when they applied excessive force to his legs, allegedly intending to break them, with a weapon called an OPN, which left permanent scars and psychological damage. *Id.* at 8.

While in custody, Plaintiff experienced debilitating mental health issues and, as a result, was placed in solitary confinement from February 17, 2020, to July 27, 2021. *Id.* at 6, 8. Plaintiff states that his conditions of confinement were severe because they deadlocked him into his cell for seventeen months, denied him time outside his cell, and denied him daily showers. *Id.* at 8.

On October 30, 2020, Defendant Gonzales and three unidentified officers came to Plaintiff's cell, overpowered him, put him in handcuffs, and allegedly assaulted him by kneeling on his thigh and rib cage, leaving permanent scars on his body. *Id.* at 7. The four officers then brought a wheelchair and put him in it, taking him to court without a "drag order". *Id.* at 8.

 Plaintiff further states that he has filed several complaints in several different courts, but that, from April 11, 2018, (the date of Plaintiff's incarceration) until his resignation on an unknown date, Defendant Sewitsky was a mailing officer who held or did not timely deliver Plaintiff's legal mail. *Id.* at 9. Plaintiff states that he should have

received his legal mail within 48 hours, but he received it twenty days later instead, which caused several of his cases to be dismissed. *Id.*

Plaintiff seeks $50,000,000.00 in damages for his physical and mental injuries. *Id.* at 11. In the present Motion [#82], Defendants seek dismissal of all claims asserted by Plaintiff, the construction of which is discussed in Section III.B. below.

## II. Standard of Review

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). However, conclusory allegations are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). Rather, "[a] complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Iqbal*, 556 U.S. at 679).

"A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal,*

*Inc.*, 861 F.3d 1081, 1104-05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

#### A.    Preliminary Issues

Before turning to the substance of the Motion [#82], the Court addresses a few preliminary issues.

##### 1.    Timing of Plaintiff's Response

First, Defendants note that Plaintiff's Response [#85] was not timely filed. *Reply* [#87] at 9. Local Rule 7.1(d) requires a response to be filed within 21 days of service of a motion. D.C.COLO.LCivR 7.1(d). Here, the Motion [#82] was filed and mailed to Plaintiff on November 2, 2023. *See* [#82] at 20. Taking into account mailing time, Plaintiff's Response was due on or about November 27, 2023. Plaintiff's Response [#85] is dated December 13, 2023, was postmarked December 19, 2023, and was received by the Court on December 21, 2023. *See* [#85] at 1, 17-18. In his Surreply [#89], Plaintiff asserts that his pro se status and his mental illness caused him to take longer to complete his Response [#89] than the time allowed. *See* [#89] at 7-9.

The Court accepts Plaintiff's Response [#85]. First, although Plaintiff's Response [#85] was untimely, its filing was not so significantly delayed that it caused any significant delay in this lawsuit or any prejudice to Defendants. Second, the Court considers Plaintiff's status as a pro se litigant and his mental illness challenges, including the fact that he has been held at the Colorado Mental Health Institute at Pueblo. However, the Court warns Plaintiff that, in the future, should he need additional time to respond to a

motion or to comply with a deadline, **he must file a motion asking for additional time** and identifying how much additional time he believes he needs. Failure to do so may result in the Court striking late-filed documents from this lawsuit.

### 2.    Attachments to Plaintiff's Briefs

Next, Defendants argue that the Court should not consider Plaintiff's Affidavit II that is attached to Plaintiff's Response [#85]. *See* [#85] at 13-17. The Court notes that this attachment, as well as Plaintiff's attachments to his Surreplies [#88, #89], are generally improper. Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the Court may consider documents outside of the complaint on a motion to dismiss in three instances. First, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside documents subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006). Third, the Court may consider outside documents that are both central to the plaintiff's claims and to which the plaintiff refers in his complaint. *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, the Court has examined the documents attached to Plaintiff's briefs and finds that they are either immaterial or not appropriately considered under these legal standards.

### 3. Doe Defendants

In addition to the named Defendants, Plaintiff brings this lawsuit against several unidentified officers, who are referred to in various ways throughout the Fifth Amended Complaint [#81], including as "several unknown supervisors," *see* [#81] at 3, "3 unknown officer[s]," *see id.* at 7, and "several unknown officer[s]," *see id.* at 10.

Plaintiff proceeds in forma pauperis in this case pursuant to 28 U.S.C. § 1915. *Order* [#6]. When a litigant is given leave to proceed without full prepayment of the initial filing fee, then, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the [C]ourt shall dismiss *at any time*" all or any part of such complaint which (1) "is frivolous or malicious"; (2) "fails to state a claim on which relief can be granted"; or (3) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Unlike Rule 12(b)(6), § 1915(e)(2)(B)(ii) "authorizes the dismissal of a case prior to service of process if the court determines that the action fails to state a claim upon which relief can be granted." *Collier v. Nelson*, 246 F.3d 679, 679 (10th Cir. 2000). Thus, even though the Doe Defendants have not been served, the Court may dismiss claims against them pursuant to § 1915(e)(2)(B)(ii) if Plaintiff's claims are futile. *See, e.g.*, *Warner v. Lund*, No. 23-2187, 2024 WL 711037, at *3 (10th Cir. Feb. 21, 2024).

For the same reasons provided below as to the claims against the named Defendants, the Court finds that Plaintiff's claims fail as to the Doe Defendants.

### B. Construction of Plaintiff's Claims

The precise bases for many of Plaintiff's claims are unclear. In the Motion [#82], Defendants identified ten possible claims. *See* [#82] at 3-5. In his Response [#85], Plaintiff

states that he has only asserted eight claims. *See* [#85] at 2. However, he only explicitly outlines five of his claims in his Response [#85], i.e., Claims One through Four and Eight. *See id.* at 9-10.

Based on the Court's reading of the Fifth Amended Complaint [#81] and Plaintiff's clarifications in the briefing, the Court construes the Fifth Amended Complaint [#81] as asserting eight claims. For ease of reference in connection with the briefs, however, the Court utilizes Defendants' numbering of the claims: (1) Claim One: violation of civil rights by Defendants Anderson and Hernandez on June 21, 2019, *see Fifth Am. Compl.* [#81] at 6-7; (2) Claim Two: violation of civil rights by Defendant Gonzalez and three unidentified Doe officers on October 30, 2020, *see id.* at 7-8; (3) Claim Three: violation of civil rights by Defendants Burgos and Howell on February 17, 2020, *see id.* at 8; (4) Claim Four: violation of civil rights by Defendant Diggins based on conditions of confinement, *see id.* at 8; (5) Claim Six: violation of civil rights by Defendant Sewitsky based on delayed delivery of legal mail, *see id.* at 9; (6) Claim Seven: violation of civil rights by Defendant Diggins based on a failure to intervene in the other claims, *see id.* at 9; (7) Claim Nine: violation of civil rights by several unidentified Doe officers based on a failure to intervene during the February 17, 2020 incident, *see id.* at 10; and (8) Claim Ten: a municipal liability claim against Defendant City and County of Denver, *see id.* at 10.

Although the Court appreciates Defendants' diligence in liberally reading the Fifth Amended Complaint [#81], the Court rejects Defendants' broad reading of the pleading with respect to the following two potential claims, the ones Defendants labeled as "Claim Five" and "Claim Eight". *See Motion* [#82] at 4-5. First, regarding Claim Five, Plaintiff alleges that, "[s]ince 2020[,] forced medication has been court order[ed] to break inmate

silence on his alleged crime." *Fifth Am. Compl.* [#81] at 9. Defendants construe this sentence as "some form of excessive force claim and possibly in violation of his Fifth Amendment rights." *Motion* [#82] at 4. The Court finds that this sentence is not attempting to assert a claim because the statement does not even obliquely reference any Defendant in this case. Further, even if the Court considered this statement as attempting to assert a claim, the bare-bones, conclusory nature of this allegation is insufficient to adequately state a claim under Fed. R. Civ. P. 12(b)(6), whether under the Fifth Amendment or otherwise.

Second, regarding Claim Eight, Plaintiff asserts that "[a]ll of the above violated my rights (1st, 4th, 5th, 8th, and 14th Amendment[s] and due process)[;] they . . . also had inflicted cruel and unusual punishment and a pretrial detainee or a civilly committed detainee can not be punished at all." *Fifth Am. Compl.* [#81] at 10. Defendants construe this statement as a separate claim. *Motion* [#82] at 4-5. The Court finds that this sentence is not attempting to assert a separate claim, but rather that it merely provides the legal basis for Plaintiff's assertions of civil rights violations with respect to his other claims.

## C.    Fourth, Fifth, and Eighth Amendments

"[T]he Fourth Amendment protects against 'unreasonable searches and seizures' and pertains to the events leading up to and including an arrest of a citizen previously at liberty[.]" *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) (emphasis omitted). The Eighth Amendment, on the other hand, applies to "those who have been convicted of crime[.]" *Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019). "[W]hen neither the Fourth nor Eighth Amendment applies—when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction

punishment—we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities." *Porro*, 624 F.3d at 1326; *see also Colbruno*, 928 F.3d at 1162 ("For those in pretrial confinement . . . , claims regarding mistreatment while in custody generally do not come within the protection of the Fourth Amendment or the Eighth Amendment."). In other words, the Fifth or the Fourteenth Amendment applies to pretrial detainees.

"The Fifth Amendment's Due Process Clause forbids the *federal* government from depriving any person of life, liberty, or property, without due process of law." *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019) (emphasis added) (internal quotation marks omitted). On the other hand, "[t]he Due Process Clause of the Fourteenth Amendment . . . . prohibits a *State* from depriving any person of life, liberty, or property, without due process of law." *Id.* (emphasis added) (internal quotation and alteration marks omitted).

Here, Plaintiff was held at the Denver Downtown Detention Center as a pretrial detainee at the time of the alleged incidents underlying this lawsuit. *See Fifth Am. Compl.* [#81] at 5, 10. Thus, because Plaintiff was a pretrial detainee who was not in federal custody, neither the Fourth Amendment nor the Eighth Amendment nor the Fifth Amendment applies to Plaintiff's claims in this lawsuit. *See, e.g.*, *Garcia-Bengochea v. Utah Dep't of Corr.*, No. 2:21-cv-00536-RJS-CMR, 2024 WL 1745983, at *5 (D. Utah Apr. 23, 2024) ("[T]he Fourteenth Amendment applies when a state official uses excessive force against an 'arraigned pre-trial detainee.'").

Accordingly, the Court **recommends** that Plaintiff's claims asserted under the Fourth, Fifth, and Eighth Amendments be **dismissed with prejudice**.[4] *Knight v. Mooring*

---

[4] Where appropriate, the Court construes all Plaintiff's claims asserted under the Fourth, Eighth, and Fifth Amendments as being asserted under the Fourteenth Amendment instead. *See Garrett*

*Cap. Fund, LLC*, 749 F.3d 1180, 1190-91 (10th Cir. 2014) (stating that, when a complaint fails to state claim under Rule 12(b)(6) and granting leave to amend would be futile, dismissal with prejudice is appropriate).

## D.    First Amendment

The Court construes Plaintiff's Claim Six against Defendant Sewitsky as two related First Amendment claims arising from alleged interference with Plaintiff's mail and his access to the courts. *See Fifth Am. Compl.* [#81] at 9.

### 1.    Statute of Limitations

Defendants argue that this claim is partially barred by the statute of limitations. *Motion* [#81] at 6-8.

In Colorado, a two-year limitations period applies to § 1983 claims. *See McDonald v. Citibank N.A.*, No. 21-1313, 2022 WL 16557957, at *1 n.2 (10th Cir. Nov. 1, 2022) ("Because there is no federal statute of limitations for § 1983 and § 1985 actions, Colorado's two-year residual statute of limitations for personal-injury claims applies to those claims."); *Braxton v. Zavaras*, 614 F.3d 1156, 1159-60 (10th Cir. 2010) (stating that the statute of limitations for § 1983 actions brought in Colorado is two years from the time the cause of action accrued). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998).

Here, Plaintiff asserts that Defendant Sewitsky violated his First Amendment rights "since [Plaintiff's] incarceration 4-11-18 until [Defendant] Sewitsky['s] resignation as a

---

*v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (stating that "a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers").

mailing officer (which to [Plaintiff] is a[n] unknown date)[.]" *Fifth Am. Compl.* [#81] at 9. Plaintiff's lawsuit was filed on July 27, 2022. *See Compl.* [#1]. Thus, any portion of this claim based on events from April 11, 2018, through July 26, 2020, are time-barred under the applicable two-year statute of limitations.

In response to Defendants' argument, Plaintiff states that that they "refuse to acknowledge that [Plaintiff] suffer[s] from multiple mental illness[es] including psychosis, and that during Plaintiff['s] incarceration [in] 2018 [he was experiencing] those illness[es] and could not function 100%[.]" *Response* [#85] at 5. Thus, Plaintiff appears to argue that the statute of limitations should have been tolled to allow the filing of this lawsuit. *Id.* at 5-6.

Like represented litigants, pro se litigants must comply with any statutes of limitations applicable to their claims. *See Ombe v. Cook*, 861 F. App'x 182, 184-85 (10th Cir. 2021) (affirming the lower court's rejection of autistic and depressed plaintiff's request for leniency because the mental impairment "was not so extraordinary as to prevent him" from timely filing his claims). Here, neither statutory nor equitable tolling applies. Regarding statutory tolling, the Court is aware of no statute which tolls the statute of limitations based on a litigant's mental health issues.

Regarding equitable tolling, "under Colorado law, this only applies when the defendant's wrongful acts prevented the plaintiff from filing within the appropriate time, or when exceptional circumstances prevented the plaintiff from filing within the statute of limitations." *Kolak v. Backerville*, No. 22-cv-02743-DDD-KAS, 2024 WL 1239936, at *2 (D. Colo. Mar. 21, 2014) (citing *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096-97 (Colo. 1996)). Plaintiff does not provide any information that any Defendant in

this lawsuit prevented the filing of *this* lawsuit, despite general problems he alleges he has had with respect to his legal mail. *See, e.g.*, *Fifth Am. Compl.* [#81] at 9; *Response* [#85] at 4-5. This is also not a situation having "the sort of 'exceptional' or 'extraordinary' circumstances courts have found warrant tolling[.]" *See Kolak*, 2024 WL 1239936, at *2. "[C]ircumstances only rise to the level of extraordinary when they 'make it impossible for the plaintiff to file his or her claims within the statutory period[.]" *Brown v. Shoe*, No. 17-cv-03038-RM-KLM, 2018 WL 3363734, at *3 (D. Colo. July 10, 2018) (quoting *Dean Witter*, 911 P.2d at 1097). As examples, courts have found this standard to have been met when the Civil War forced southern courts to close, *see Hanger v. Abbott*, 73 U.S. 532 (1867), when a plaintiff's claim arose shortly before his internment in Japan during World War II thus preventing him from accessing the courts, *see Osbourne v. United States*, 164 F.2d 767 (2d Cir. 1947), and where a lower court's enforcement of an unconstitutional statute prevented the plaintiff from timely filing his lawsuit, *see Seattle Audubon Soc'y v. Robertson*, 931 F.2d 590 (9th Cir. 1991), *rev'd on other grounds*, 503 U.S. 429 (1992).

   *Ombe v. Cook* is instructive as to the circumstances here. In that case, the Tenth Circuit Court of Appeals affirmed a district court's holding that the statute of limitations was not equitably tolled "in part because, notwithstanding the severity of [the plaintiff's] mental impairment, it was not so extraordinary as to prevent him from actively prosecuting his other civil rights cases[.]" *Ombe*, 861 F. App'x at 184 (internal quotation marks omitted). The Tenth Circuit stated that "[i]t was reasonable for the district court to conclude that having conducted multiple federal lawsuits against other defendants from inception to appeal within the statute of limitations, [the plaintiff] could not credibly assert that he

faced an extraordinary circumstance that prevented him from timely filing a claim against these defendants." *Id.* at 185. Here, Plaintiff filed five other lawsuits in the District of Colorado in early 2021. *See Ellis v. Gonzales*, No. 21-cv-00222-LTB-GPG; *Ellis v. Anderson*, No. 21-cv-00223-LTB-GPG; *Ellis v. Anderson*, No. 21-cv-00225-LTB-GPG; *Ellis v. Hernandez*, No. 21-cv-00262-LTB-GPG; *Ellis v. Huff*, No. 21-cv-00454-LTB-GPG. The timing of these lawsuits' filing supports the Court's finding that extraordinary circumstances did not prevent Plaintiff from timely filing his claims against Defendant Sewitsky and, as discussed below, other Defendants on some of Plaintiff's other claims.

Accordingly, the Court **recommends** that Plaintiff's Claim Six be **dismissed with prejudice** to the extent it is premised on events that occurred prior to July 27, 2020.[5] *See, e.g.*, *McGowan v. Wal-Mart Stores*, 757 F. App'x 786, 788 n.3 (10th Cir. 2019) ("A dismissal based on timeliness would ordinarily be with prejudice."); *Gee v. Pacheco*, 627 F.3d 1178, 1181 (10th Cir. 2010) (affirming dismissal with prejudice of claims barred by the statute of limitations).

### 2. Access to the Courts and Interference with Mail

With respect to these claims, Plaintiff alleges that Defendant Sewitsky "has held or not delivered my legal mail on time." *Fifth Am. Compl.* [#81] at 9. He states that he "should have received my legal mail on time [in] 48 hours," but that he "receive[d] [his legal mail] 20 days later." *Id.* He asserts that "this has cause[d] several court cases to be dismissed

---

[5] In his Surreply [#89], Plaintiff states that Defendant Sewitsky had been "fire[d]" by the Denver Sheriff Department "by" July 20, 2022. *See* [#89] at 3. Thus, all Plaintiff's First Amendment claims against Defendant Sewitsky are apparently barred by the statute of limitations. Nevertheless, given that this allegation is not included in the Fifth Amended Complaint [#81], the Court cannot consider it in resolving the present Motion [#81]. *See Wilson*, 2020 WL 5815915, at *5 (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

or dismissed due to time lines." *Id.* Plaintiff avers that "Denver Sheriff Department [personnel] like Ryan Sewitsky are known for holding legal mail . . . purposefully in order to force court dismissal." *Id.*

### a.    Access to the Courts

Like other individuals, prisoners have the constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts for the purpose of presenting their complaints. *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (collecting cases). This right means that "the state must provide [the prisoner] with a 'reasonably adequate opportunity' to present his legal claims." *United States v. Santiago*, 199 F. Supp. 3d 1287, 1289-90 (D. Colo. 2016) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993)). Practically, this means that prisoners must be given "paper, writing implements, stamps, and access to notary services, as well access to an adequate law library or legal advisor." *Id.* (citing same). The right of access to the courts "has not been extended by [the United States Supreme Court] to apply further than protecting the ability of an inmate to prepare a petition or complaint." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).[6]

---

[6] Although *Wolff v. McDonnell* involved an access to the courts claim asserted under the Fourteenth Amendment's due process clause, its holding is applicable to Plaintiff's First Amendment claim. The constitutional right of access to the courts is "rooted in the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities provisions of Article IV and the Fourteenth Amendment, and the Petition Clause of the First Amendment." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1235 (D.N.M. 2016); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (observing that the Supreme Court has variously described the right of access to the courts as part of the Article IV privileges and immunities clause, the First Amendment petition clause, the Fifth and Fourteenth Amendments' respective due process clauses, and the Fourteenth Amendment's equal protection clause). However, "[t]he elements of a denial of court access claim, under any source, appear to be uniform." *Raguindin v. Yates*, No. 15-cv-00635-CMA-KLM, 2016 WL 11384333, at *7 (D. Colo. Feb. 29, 2016) (citing *Christopher*, 536 U.S. at 413-16). Thus, the same law applies to Plaintiff's right of access to the courts regardless of how the claim is asserted.

Claimed violations of the right to access the courts commonly occur alongside allegations of interference with ingoing and outgoing mail. *See, e.g.*, *Gee*, 627 F.3d at 1190-91; *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). To have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 350-55 (1996); *see also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from the defendants' actions."). An inmate may demonstrate actual injury by showing that he was unable to meet a filing deadline or present a claim, which resulted in an adverse ruling or other impediment. *Lewis*, 518 U.S. at 350, 348-355. Moreover, "an isolated incident, without any evidence of improper motive or resulting interference with [the plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (quotation marks and citation omitted).

Here, in his Fifth Amended Complaint [#81], Plaintiff has not directed the Court's attention to any *specific* case in which he was harmed, received an adverse ruling, or was unable to pursue his claims. He has not described what specific outgoing or incoming mail was delayed and how that mail detrimentally impacted a specific lawsuit. Thus, this portion of the claim should be dismissed because Plaintiff has not sufficiently alleged prejudice or that his right of access to the courts has been impeded such that it constitutes actual injury.

Accordingly, the Court recommends that the Motion [#81] be **granted in part**, and that Plaintiff's Claim Six, to the extent it is based on Plaintiff's right to access the courts and premised on events occurring on or after July 27, 2020, be **dismissed without**

**prejudice**. *See Reynoldson v. Schillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (explaining that if "it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief," particularly when the litigant is pro se, a court dismisses without prejudice so that the plaintiff can seek leave to amend).

### b.   Interference with Mail

"[A] First Amendment claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules or that the applicable rule was invalid, either generally or in the specific context of the claim." *Gee*, 627 F.3d at 1185. Additionally, "bare allegations . . . of brief delays in mailing or receiving . . . correspondence . . . do not rise to the level of constitutional violations." *Id.* at 1190. The prisoner must demonstrate actual injury from the interference with his mail, along with improper motive. *Id.* at 1191; *see Treff*, 74 F.3d at 194 (finding no constitutional violation where the prisoner plaintiff claimed that "mail to and from the federal district court on three occasions took four, seven, and nine days" because the prisoner "claim[ed] no prejudice as a result of these delays"). Even "isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [the plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim." *Berger v. White*, 12 F. App'x 768, 771 (10th Cir. 2001) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

In *Gee*, the prisoner plausibly alleged a violation of his First Amendment rights where he alleged that he had placed adequate postage on letters but that the defendant refused to send them. 627 F.3d at 1188. The prisoner also plausibly alleged violation of his rights where a letter from his sister was confiscated and never given to him after he

was released from temporary isolation. *Id.* Here, however, the Fifth Amended Complaint [#81] contains no allegations that the intercepted mail was protected or privileged material; further, Plaintiff alleges that the mail was simply delayed rather than indefinitely withheld from Plaintiff. *Fifth Am. Compl.* [#81] at 9. Additionally, based on Plaintiff's allegations, the delayed mail appears to be an isolated incident. *See id.* (focusing on one incident where his mail was delayed by twenty days). Isolated incidents do not support a civil rights claim. *Berger*, 12 F. App'x at 771. In short, Plaintiff fails to adequately articulate the harm he suffered due to the delay of mail.

Accordingly, the Court **recommends** that the Motion [#81] be **granted in part**, and that Plaintiff's Claim Six, to the extent based on events occurring on or after July 27, 2020, regarding Plaintiff's right to mail be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### E.    Fourteenth Amendment

Plaintiff's remaining claims against the individual Defendants all fall under the Fourteenth Amendment.

#### 1.    Statute of Limitations

For the same reasons articulated in Section III.D.1. above, several of Plaintiff's claims are barred by the statute of limitations. As stated, federal constitutional claims asserted under 42 U.S.C. § 1983 are subject to a two-year statute of limitations, which here expired as to events occurring prior to July 27, 2020. *See Braxton*, 614 F.3d at 1159.

First, Plaintiff's Claim One, violation of civil rights by Defendants Anderson and Hernandez, is based on alleged events occurring on June 21, 2019. *Fifth Am. Compl.* [#81] at 6-7. Thus, this claim is time-barred as occurring prior to July 27, 2020.

Second, Plaintiff's Claim Three, violation of civil rights by Defendants Burgos and Howell, is based on alleged events occurring on February 17, 2020. *Id.* at 8. Thus, this claim is time-barred as occurring prior to July 27, 2020.

Third, Plaintiff's Claim Nine, violation of civil rights by several unidentified Doe officers, is based on an alleged failure to intervene during the February 17, 2020 incident. *Id.* at 10. Thus, this claim is time-barred as occurring prior to July 27, 2020.

Fourth, Plaintiff's Claim Seven, violation of civil rights by Defendant Diggins, is generally based on his failure to intervene in the events underlying the other claims. *Fifth Am. Compl.* [#81] at 9. Thus, this claim is time-barred *in part*, as it pertains to the events underlying Claim One, Claim Three, and Claim Nine.[7]

Accordingly, the Court **recommends** that Plaintiff's Claim One, Claim Three, Claim Seven (in part), and Claim Nine be **dismissed with prejudice**. *See, e.g.*, *Gee*, 627 F.3d at 1181; *McGowan*, 757 F. App'x at 788 n.3.

### 2.    Claim Two: The October 30, 2020 Incident

Under Claim Two, Plaintiff asserts violation of his civil rights by Defendant Gonzalez and three unidentified Doe officers on October 30, 2020. *Fifth Am. Compl.* [#81] at 7-8. Here, Plaintiff alleges that Defendant Gonzales and the three unidentified officers came to Plaintiff's cell, overpowered him, put him in handcuffs, and allegedly assaulted him by kneeling on his thigh and rib cage, leaving permanent scars on his body. *Id.* at 7. The four officers then brought a wheelchair and put him in it, taking him to court without a drag order. *Id.* at 8. In the Motion [#82], Defendants argue that Plaintiff fails to state a

---

[7] To the extent Plaintiff *may* also be asserting under Claim Seven that Defendant Diggins failed to intervene in the events underlying Plaintiff's Claim Six under the First Amendment, this claim is also time-barred in part, for the reasons discussed in Section III.D.1. above.

claim because he did "not specify what any particular Defendant did to him in the 'assault' as they attempted to bring him before the court." *See* [#82] at 13. They also argue that they are entitled to qualified immunity. *Id.* at 18.

A qualified immunity defense "protects government officials from civil liability so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Arnold v. City of Olathe*, 35 F.4th 778, 788 (10th Cir. 2022) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). To determine whether qualified immunity applies, the Court considers (1) whether "the officers' alleged conduct violated a constitutional right," and, if so, (2) whether "it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Wise v. Caffey*, 72 F.4th 1199, 1205 (10th Cir. 2023) (citation and internal quotation marks omitted).

"[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "In deciding whether the force deliberately used is, constitutionally speaking, 'excessive,' . . . a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).[8] "Objective reasonableness under *Kingsley* turns on the 'facts and circumstances

---

[8] By contrast, an Eighth Amendment excessive force analysis includes an additional subjective prong, i.e. "whether the defendant acted with a sufficiently culpable state of mind." *Ullery v. Bradley*, 949 F.3d 1282, 1290 (10th Cir. 2020) (internal quotation omitted); *see also Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020) (noting that the "previous statement that the Eighth

of each particular case.'" *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1171 (10th Cir. 2020) (quoting *Kingsley*, 576 U.S. at 397) (internal citation omitted). "In *Kingsley*, the Supreme Court listed non-exclusive factors that may bear on whether an officer's use of force on a pretrial detainee was objectively reasonable: (1) the relationship between the need for the use of force and the amount of force used, (2) the extent of the plaintiff's injury, (3) any effort made by the officer to temper or to limit the amount of force, (4) the severity of the security problem at issue, (5) the threat reasonably perceived by the officer, and (6) whether the plaintiff was actively resisting." *Rowell*, 978 F.3d at 1171-72 (quoting *Kingsley*, 576 U.S. at 397) (internal citations and quotation marks omitted).

The Court notes that Plaintiff previously asserted this claim utilizing very similar language in *Ellis II v. Gonzales*, No. 21-cv-00222-LTB-GPG. There, he alleged that, on October 30, 2020, Defendant Gonzales "had c[o]me to my cell #D101-3 and had use[d] excessive force and had injure[d] me and had cause[d] permanent scars on my rib cage and had drag[ged] m[e] to court with out a drag order from the judge and had violate[d] my due process rights and had kidnap[ped] me." *Ellis II v. Gonzales*, No. 21-cv-00222-LTB-GPG, 2021 WL 11550926, at *2 (D. Colo. Apr. 13, 2021). The Magistrate Judge reviewing Plaintiff's complaint determined that the allegations were "unclear and conclusory" and therefore failed to provide a short and plain statement of his claim showing an entitlement to relief, thereby failing to meet the requirements of Fed. R. Civ. P. 8(a). *Id.* The Senior District Judge later adopted that recommendation. *Ellis II v.*

---

and Fourteenth Amendment analyses are 'identical[,]'" as set forth in *Lopez v. LeMaster*, 172 F.3d 756 (10th Cir. 1999), "is no longer good law after the Supreme Court's decision in *Kingsley*").

*Gonzales*, No. 21-cv-00222-LTB-GPG, 2021 WL 11550925, at *1 (D. Colo. May 27, 2021).

Here, Plaintiff has added a few new allegations, explaining that Defendant Gonzales and three unknown officers used excessive force by kneeling on his thigh and rib cage, which overpowered him and resulted in his being handcuffed. *Fifth Am. Compl.* [#81] at 7. He therefore has met the Rule 8(a) threshold, if barely. *See Order* [#15]. However, under Rule 12(b)(6), the Court must determine whether the Fifth Amended Complaint [#81] contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plaintiff has not done so. Although he need not provide allegations relating to all the non-exclusive *Kingsley* factors, he must provide enough information for the Court to determine that the force used by officers was *excessive*, i.e., not objectively reasonable, to state a claim. Plaintiff has provided minimal or no information regarding the relationship between the need for the use of force and the amount of force used (stating only that he was dragged to Court against his will in the absence of a drag order), the extent of his injury (stating in a conclusory manner that he was left with unidentified "permanent scars"), any effort made by Defendants to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by Defendants, and whether Plaintiff was actively resisting. *See Rowell*, 978 F.3d at 1171-72.

In short, without more, the Court cannot find that Plaintiff has stated a Fourteenth Amendment claim that the force used by Defendants here was excessive. Accordingly, the Court **recommends** that Plaintiff's Claim Two be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### 3. Claim Four: Due Process

Under Claim Four, Plaintiff asserts a violation of his civil rights by Defendant Diggins, the Denver County Sheriff,[9] based on conditions of confinement. *Fifth Am. Compl.* [#81] at 8. Plaintiff alleges that, while in custody, he experienced disabling mental health issues and, as a result, was placed in solitary confinement from February 17, 2020, to July 27, 2021. *Id.* at 6, 8. Plaintiff states that his conditions of confinement were severe because they deadlocked him into his cell for seventeen months (approximately 510 days), denied him time outside of his cell, and denied him daily showers. *Id.* at 8. He further states in a conclusory manner that, "as a [pretrial] detainee" he "should not be punish[ed] at all." *Fifth Am. Compl.* [#81] at 8. Thus, Plaintiff appears to assert that he should not have been placed in solitary confinement because doing so was punishment.

In *Kingsley v. Hendrickson*, 576 U.S. 389, 401 (2015), the Supreme Court reiterated that "pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). Thus, "the constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to 'punishment' in the constitutional sense." *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981); *see also Bell*, 441 U.S. at 520, 535 (stating, "[i]n evaluating the constitutionality of conditions or restrictions of pretrial detention" in the Due Process context, "the proper inquiry is whether those conditions amount to punishment of the detainee.").

---

[9] *See Fifth Am. Comp.* [#81] at 3 (identifying Defendant Diggins as the Denver Sheriff); *Motion to Dismiss* [#82] at 16 n.3 (same).

The Court finds that Plaintiff's due process claim is best construed as two separate claims, i.e., a substantive due process claim and a procedural due process claim. The Tenth Circuit Court of Appeals has not yet provided an explicit framework regarding precisely when a conditions of confinement claim is substantive and when it is procedural. However, the Fourth Circuit Court of Appeals has recently provided such guidance, which the Court utilizes here to the extent consistent with Tenth Circuit precedent. *See Williamson v. Stirling*, 912 F.3d 154 (4th Cir. 2018).

In short, in the conditions of confinement realm, there are two types of substantive due process claims a pretrial detainee can make: (1) a challenge to shared, "general conditions of confinement or the treatment of all detainees in a specific facility," and (2) a challenge to "individualized restrictions" where the treatment is "so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment." *Id.* at 174-75. A procedural due process claim is based on "individually-imposed restrictions—as opposed to shared conditions of confinement," and may also be divided into two types: (1) restrictions imposed for disciplinary purposes, and (2) restrictions imposed for administrative purposes, including "managerial and security needs." *Id.* at 174-75. The Court discusses each of these types of claims below.

### a.   Substantive Due Process

### i.   Shared Conditions

"Typically, a substantive due process claim pursued by a pretrial detainee challenges the general conditions of confinement or the treatment of all detainees in a specific facility." *Williamson*, 912 F.3d at 174. "The controlling inquiry for such a claim is whether the conditions imposed on the pretrial detainee constitute 'punishment.'" *Id.* A

plaintiff asserting this type of claim must adequately allege that the "particular restriction was either: (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective." *Id.* (citation and internal quotation marks omitted).

Here, Plaintiff has not complained of any "shared conditions of confinement." *Id.* Rather, his allegations only go to "individually-imposed restrictions," i.e., the conditions of his own solitary confinement and his own lack of daily showers. *See id.*; *Fifth Am. Compl.* [#81] at 8. Thus, the Court finds that Plaintiff is not asserting a shared-conditions substantive due process claim.

### ii.    Categorically-Prohibited Conditions

"In some circumstances, . . . the treatment of a pretrial detainee can be so disproportionate, gratuitous, or arbitrary that it becomes a categorically prohibited punishment that will sustain a substantive due process claim." *Williamson*, 912 F.3d at 175. Such "substantive liberty interests under the Fourteenth Amendment" include the "right[s] to adequate food, shelter, clothing, and medical care." *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982). In other words, a lack of these kinds of necessities is deemed punishment even if procedural protections are otherwise in place.

The Tenth Circuit has held that this type of a pretrial detainee's conditions-of-confinement claim requires two elements: (1) the defendant "imposed conditions posing a substantial risk of serious harm to inmate health or safety, depriving [the] detainee[ ] of the 'minimal civilized measure of life's necessities'," and (2) the defendant "acted with deliberate indifference to the detainee['s] health and safety." *United States v. Buntyn*, 104 F.4th 805, 809 (10th Cir. 2024) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir.

1998)); *see also Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (holding that a pretrial detainee asserting violation of "his right to humane conditions of confinement" must allege "'(1) the official[ ] knew of and disregarded an excessive risk to his health and safety, and (2) the alleged deprivation was sufficiently serious'" (quoting *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003))).

The Tenth Circuit's analysis of this type of claim differs from the Fourth Circuit's. *See Strain v. Regalado*, 977 F.3d 984, 990 n.4 (10th Cir. 2020) (acknowledging a circuit split regarding whether *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), eliminated the deliberate indifference element from Fourteenth Amendment pretrial detainee claims other than excessive force cases, which are now analyzed under an exclusively objective standard). The Tenth Circuit has retained the deliberate indifference element for this type of conditions-of-confinement claim.[10] *See Hooks v. Atoki*, 983 F.3d 1193, 1203-04 (10th Cir. 2020) ("We also take this opportunity to clarify that our recent discussion of the deliberate indifference standard in *Strain v. Regalado*, 977 F.3d 984 (10th Cir. 2020), applies outside the medical context.").

The Court notes that, although cases like *Craig v. Eberly* discuss the Eighth Amendment, those standards apply here as well because the Court is determining, under the first element, whether the defendant deprived the plaintiff of the "minimal civilized measure of life's necessities." *Buntyn*, 104 F.4th at 809 n.3 (citing *Craig*, 164 F.3d at 496; *Blackmon v. Sutton*, 734 F.3d 1237, 1244 (10th Cir. 2013) (stating that, because "detention center officials surely owe pretrial detainees . . . at least the same standard of

---

[10] The Court emphasizes that this type of claim, which focuses on categorically prohibited conditions, differs from other types of due process conditions-of-confinement claims, which focus on whether the conditions/restrictions were imposed as punishment, and for which there is not a deliberate indifference component. *See, e.g.*, *Colbruno*, 928 F.3d at 1162-63.

care prison officials owe convicted inmates," Eighth Amendment case law regarding deliberate indifference claims applies to the Fourteenth Amendment); *see also Covalt v. Inmate Servs. Corp.*, 658 F. App'x 367, 369 (10th Cir. 2016) (stating that a court analyzing a pretrial detainee's claim of unconstitutional conditions of confinement, although governed by the Due Process Clause of the Fourteenth Amendment, utilizes the Eighth Amendment standard as a "benchmark"). In other words, categorically-prohibited conditions regarding the "minimal civilized measure of life's necessities" under this type of substantive due process claim are the same under both the Fourteenth Amendment and the Eighth Amendment.

The Tenth Circuit has instructed in pretrial detainee cases that "jail conditions may be restrictive and even harsh without violating constitutional rights." *Ledbetter*, 318 F.3d at 1188 (internal quotation marks omitted); *Routt*, 764 F. App'x at 770. However, jail officials must "provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig*, 164 F.3d at 495 (citation and internal quotation marks omitted). This first element requires the plaintiff to point to "a single, identifiable human need" of which he was deprived. *Buntyn*, 104 F.4th at 810 (quoting *Craig*, 164 F.3d at 495). The Court may not "combine unrelated conditions" when evaluating this element. *Id.* Rather, the Court "can combine the conditions only if they 'mutually enforce[ed]' each other to deprive a detainee of a single human need, such as sanitation." *Id.* (quoting *Craig*, 164 F.3d at 495).

Importantly, "[t]he duration of the condition is often critical." *Buntyn*, 104 F.4th at 810 (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("While no single factor

controls the outcome of these cases, the length of exposure to the conditions is often of prime importance.")). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to" a constitutional violation, but "'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain*, 264 F.3d at 974 (quoting *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000)).

For example, in *Littlefield v. Deland*, 641 F.2d 729, 730-31 (10th Cir. 1981), the Tenth Circuit Court of Appeals affirmed a lower court's finding of a due process violation arising from a mentally ill pretrial detainee's 56-day placement in "a solitary cell long used by the county to punish disorderly pretrial detainees and to segregate prisoners with severe mental disorders." The detainee was housed in a cell with no windows, interior lights, bunk, floor covering, or toilet except for a hole in the floor; he was deprived of clothing and bedding; and he had no opportunities to recreate outside his cell or to possess reading or writing materials. *Littlefield*, 641 F.2d at 730-31. The detainee asserted that "this kind and length of confinement without hearing deprived him of due process of law and that it subjected him to cruel and unusual punishment." *Id.* at 731.

Although the district court found no clear evidence of jail officials' intent to punish the plaintiff, it found that "the condition and manner in which [the plaintiff] was maintained could hardly have been any worse than if he were being punished for adjudicated infractions of a serious nature." *Id.* (quoting district court's ruling). Additionally, the district court reasoned that that the "extreme deprivations" which the plaintiff endured for 56 days were "partly retributive, partly precautionary," "unreasonably degrading and inhumane," "masquerade[d] as essential custodial detention" and, therefore, were excessive in

relation to the purposes of pretrial detention *Id*. In its affirmance, the Tenth Circuit held that "to hold a pretrial detainee under conditions of detention this extreme for such an excessive period as fifty-six days" violated the due process clause.[11] *Id*. at 732 (citing *Bell*, 441 U.S. 520).

Plaintiff has not alleged that he was deprived of basic necessities such as food, clothing, shelter, medical care, or reasonable safety measures. *See Craig*, 164 F.3d at 495. Other than the time spent inside the cell, the only specific deprivation he mentions is that he was denied the opportunity to "shower on a daily basis." *Fifth Am. Compl.* [#81] at 8. He does not allege that he was denied all opportunities to shower, and he does not allege how often he was permitted to shower. The mere assertion of not being permitted a daily shower is not enough to state a sufficiently serious deprivation of a basic necessity. *See, e.g.*, *Tennyson v. Raemisch*, No. 15-cv-00707-MSK, CBS, 2017 WL 4075771, at *7 n.11 (D. Colo. Sept. 14, 2017) ("The general consensus among the various courts seems to be that limiting inmates to a single shower every two to three days will not constitute an Eighth Amendment conditions of confinement violation.") (citations omitted).

In addition, the period spent by Plaintiff in solitary confinement is not, *by itself*, constitutionally infirm. *See Buntyn*, 104 F.4th at 810. The Court has found no case holding that a period of 510 days is, by itself, categorically prohibited. Rather, whether brought under the Fourteenth Amendment or the Eighth Amendment's benchmark for these types

---

[11] The Tenth Circuit's decision here did not turn on the fact that the plaintiff was a pretrial detainee, and therefore had not been adjudicated guilty, or that he had been confined under such conditions without notice, a hearing, meaningful review, or legitimate governmental purpose. *See id.* at 730, 732. Rather, the Circuit specifically noted that "[a] determination of guilt in this case would not have altered [its] decision," because, whether under the Fourteenth or the Eighth Amendment, holding either a pretrial detainee or a prisoner "under conditions . . . this extreme for such an excessive period as fifty-six days" was unconstitutional. *Id.* at 732, 732 n.2.

of claims, courts have held that lengthy period like this may be constitutional under appropriate circumstances. For example, under the Fourteenth Amendment, the Tenth Circuit has held that a pretrial detainee placed in segregation on arrival at the detention center and kept there for approximately 390 days did not state a due process claim, where the detainee was a known escape risk. *Peoples v. CCA Detention Ctrs.*, 422 F.3d 1090, 1106-07 (10th Cir. 2005). Under the Eighth Amendment's benchmark, courts have held that placement in administrative segregation for seventeen months (the same amount of time as Plaintiff here) did not state a due process claim. *See Sperry v. Wildermuth*, No. 16-3222-SAC, 2020 WL 7770932, at *1, 4 (D. Kan. Dec. 30, 2020), *rev'd on other grounds by Sperry v. Wildermuth*, No. 21-3009, 2022 WL 946936 (10th Cir. Mar. 30, 2022); *see also Stallings v. Werholtz*, 492 F. App'x 841, 845-46 (10th Cir. 2012) (holding that an inmate's placement in administrative segregation for over three years was not constitutionally infirm where he received monthly reviews in which he was allowed to participate); *Estate of DiMarco v. Wyo. Dep't of Corrs., Div. of Prisons*, 473 F.3d 1334,1343-44 (10th Cir. 2007) (holding that an inmate's confinement in administrative segregation for fourteen months was permissible where she had appropriate procedural protections, including that her status was reviewed every ninety days where she was allowed to present her views).

There are, of course, many instances where even much shorter durations of solitary confinement, when combined with other factors such as poor conditions or a lack of procedural protection, would constitute a due process violation. *See, e.g.*, *Littlefield*, 641 F.2d at 730-31 (holding that fifty-six days was impermissible where that time was spent under extreme conditions which included deprivations of windows, interior lights,

bunk, floor covering, toilet except for a hole in the floor, clothing, bedding, recreation, and reading or writing materials). However, those types of allegations are not present, and the Court further explores any procedural issues in its procedural due process analysis below.

Potentially more troubling from a constitutional perspective, Plaintiff further alleges, without adornment, that he was denied time outside his cell during this period of solitary confinement. *Fifth Am. Compl.* [#81] at 8. This allegation borders on the conclusory. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021) ("An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."). Taking the allegation at face value, however, this statement could *possibly* support the first element of this claim. For example, if this allegation is construed as a failure to be allowed any time outside his cell for such things as outdoor exercise, the first element would be met, given the duration of time Plaintiff spent in confinement. Under the Eighth Amendment's benchmark, the Tenth Circuit has held that an inmate stated a due process claim where he had alleged he was placed in administrative segregation for approximately 1,095 days and had been denied all opportunity for outdoor exercise during that entire period. *Fogle v. Pierson*, 435 F.3d 1252, 1259-60 (10th Cir. 2006); *see also Housely v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996), (holding that allegations that inmate was given only 30 minutes of out-of-cell exercise time in three months states a claim for an Eighth Amendment violation); *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (holding that a convicted murderer who had killed another inmate, who was considered a high security risk, and who was in segregation was entitled to at least one hour per week of outdoor exercise under the Eighth Amendment).

Even if Plaintiff has adequately alleged deprivation of the "minimal civilized measure of life's necessities," though, whether based on the length of time in solitary confinement or deprivation of time out of his cell for necessities such as exercise, he has only provided conclusory allegations that Defendant Diggins knew of Plaintiff's restrictions and "acted with deliberate indifference to [Plaintiff's] health and safety." *Buntyn*, 104 F.4th at 809; *Fifth Am. Compl.* [#81] at 8. This means that, even assuming that Plaintiff has met that first element, he fails to adequately show an affirmative link between Defendant Diggins' actions as Sheriff and the denial of time outside the cell. Plaintiff states nothing more than that Defendant Diggins knew what was happening and did not act to stop it, *see Fifth Am. Compl.* [#81] at 8, but a plaintiff may not rely on mere labels or conclusions to support his claim. *See Twombly*, 550 U.S. at 555; *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that pro se litigants, like other litigants, are not permitted to rely on conclusory, unsubstantiated allegations to survive a Rule 12(b)(6) motion).

To adequately allege a culpable mindset, the plaintiff must allege that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, "[t]he subjective component is akin to 'recklessness in the criminal law,' where, to act recklessly, 'a person must 'consciously disregard' a substantial risk of serious harm.'" *Self*, 439 F.3d at 1231 (quoting *Farmer*, 511 U.S. at 837, 839) (emphasis added). Given the sparse allegations, Plaintiff has simply not alleged enough to demonstrate deliberate indifference by Defendant Diggins.

In fact, it is not even clear that Plaintiff has alleged enough to demonstrate *personal participation* by Defendant Diggins. *See Colbruno*, 928 F.3d at 1160 n.2 (stating that, to establish personal participation, the Court "must examine the allegations in the complaint as to each individual [defendant] to determine whether a plausible claim for relief is stated"). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Thus, Plaintiff must provide non-conclusory, well-pleaded facts to plausibly show that Defendant Diggins was personally responsible for the alleged deprivation of his constitutional rights. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). This means that the allegations "must provide a sufficient factual basis to make 'an affirmative link between the alleged constitutional violation and each individual defendant's participation, control, direction, or failure to supervise.'" *Pittman v. Williams*, No. 22-1441, 2023 WL 6564910, at *2 (10th Cir. Oct. 10, 2023) (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). Here, Plaintiff has not provided allegations linking Defendant Diggins to his confinement. i.e., demonstrating that Defendant Diggins had any direct involvement in the amount of time Plaintiff was permitted outside of his cell.

*Someone* must have known that Plaintiff was, as alleged, deadlocked into his cell for seventeen months and denied time outside his cell (other than non-daily showers) for the entirety of that period. Plaintiff only specifically names Defendant Diggins in connection with this claim, though, and he has failed to adequately allege the affirmative link between the alleged denial of time outside his cell and Defendant Diggins' participation in that denial. *See Serna v. Colo. Dep't of Corr.*, 108 F. App'x 570, 575-76 (10th Cir. 2004) (finding incarcerated plaintiff failed to establish that the prison warden

33

"acted . . . with . . . 'deliberate indifference,' or knowledge of any substantial risk of bodily harm to [the plaintiff] in either activating the Command Center or ordering a lock down," and the plaintiff also failed to establish that the warden "ordered the Special Operations Response Team to act" in an unconstitutional manner, knew they would act unconstitutionally, or acquiesced in such conduct). Thus, in short, based on the information alleged, the Court finds that Plaintiff has not adequately alleged a conditions of confinement claim in violation of substantive due process standards.

Accordingly, the Court **recommends** that Plaintiff's Claim Four, to the extent construed as a substantive due process claim, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### b.    Procedural Due Process

As noted above, a procedural due process claim is based on "individually-imposed restrictions—as opposed to shared conditions of confinement," and may be divided into two types: (1) restrictions imposed for disciplinary purposes, and (2) restrictions imposed for administrative purposes, including "managerial and security needs." *Williamson*, 912 F.3d at 174-75; *see, e.g.*, *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (describing *Bell*, 441 U.S. at 535-37, as "holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment"). In short, if Plaintiff were given certain types of restrictions in the absence of appropriate procedural due process protections, then his claim survives as a procedural due process claim. In other words, the Court addresses whether Plaintiff has

sufficiently alleged that the conditions of confinement were unconstitutionally imposed on Plaintiff as punishment.

As part of this claim, regardless of the type, the pretrial detainee must allege that the restriction imposed on him as a condition of confinement caused him to suffer a "disability" which exceeds such "inherent incidents of confinement" as "[l]oss of freedom of choice and privacy."[12] *Bell*, 441 U.S. at 537 (noting that "confinement in a facility . . . no matter how modern . . . results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial.").

The Complaint [#81] renders unclear whether Plaintiff asserts that an inability to shower daily was a restriction imposed as punishment. To the extent he may be, he has not alleged whether this condition is one shared by all inmates at the facility, just those in solitary confinement, or Plaintiff alone. Thus, this restriction, as alleged, is not demonstrated to plausibly exceed the inherent incidents of confinement. *See Bell*, 441 U.S. at 537. Therefore, to the extent this claim may be based on a lack of daily showers, it fails.

Regarding Plaintiff's solitary confinement allegations, to determine whether such a restriction is unconstitutional, the Court considers two questions: (1) whether detention facility officials have an "expressed intent to punish"; and (2) whether, in the absence of an express intent to punish, the restriction has "no reasonable relationship to any legitimate governmental objective" and thus amounts to "unconstitutional punishment."

---

[12] The Court notes that this is a lesser standard than the "atypical and significant hardship" standard utilized under the Eighth Amendment. *See, e.g.*, *Ortega v. Edgman*, No. CIV 21-0728 RB/JHR, 2022 WL 796374, at *4 (D.N.M. Mar. 16, 2022).

*Jenkins v. O'Neal*, No. 21-cv-03403-RM-MDB, 2023 WL 1784226, at *5 (D. Colo. Feb. 6, 2023) (citing *Blackmon*, 734 F.3d at 1240)), *recommendation adopted*, 2024 WL 943442 (D. Colo. Mar. 5, 2024). "'[A] showing of an expressed intent to punish on the part of detention facility officials'—standing alone—is sufficient to demonstrate 'the disability is imposed for the purpose of punishment.'" *Hubbard*, 830 F. App'x at 583 (quoting *Bell*, 441 U.S. at 538); *see also Peoples*, 422 F.3d at 1106 ("If an act by a prison official, such as placing the detainee in segregation, is done with an intent to punish, the act constitutes unconstitutional pretrial punishment.").

Here, Plaintiff has not alleged that Defendant expressed an intent to punish. *See generally Fifth Am. Compl.* [#81]. Therefore, the issue is whether the restriction has "no reasonable relationship to any legitimate governmental objective" and thus amounts to "unconstitutional punishment." *Jenkins*, 2023 WL 1784226, at *5. In other words, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment." *Peoples*, 422 F.3d at 1106 (modification in the original) (quoting *Bell*, 441 U.S. at 539). Even "proportional restrictions imposed on a pretrial detainee for a permissible purpose can trigger due process protections, pursuant to *Bell* and the Due Process Clause." *Williamson*, 912 F.3d at 175.

### i.    Disciplinary Purposes

"[J]ail officials are entitled to discipline pretrial detainees for infractions committed in custody . . . without running afoul of *Bell*." *Williamson*, 912 F.3d at 175. "If the restriction imposed by jail officials is a disciplinary one — arising from a pretrial detainee's misconduct in custody — the detainee is entitled to notice of the alleged misconduct, a

hearing, and a written explanation of the resulting decision." *Id.* "The key difference between permissible 'disciplinary' restrictions and unconstitutional 'punishment' is that the former are intended to advance — and are reasonably related to — 'the effective management of the detention facility.'" *Id.* at 176 n.18 (quoting *Bell*, 441 U.S. at 540). Thus, "disciplinary measures based on a pretrial detainee's misconduct in custody and proportional thereto are not 'punishment' within the meaning of *Bell* and therefore are not unconstitutional." *Id.*

While the Court must take all factual allegations as true, it is not required to draw unsupported legal conclusions in Plaintiff's favor (such as, for example, that the decision to put him in solitary confinement was punitive in a constitutional sense) or to make inferences based on facts not alleged. *See Rosa v. McAllister*, No. 23-cv-00983-GPG-KAS, 2024 WL 3859945, at *8 (D. Colo. Aug. 19, 2024). Here, Plaintiff has not alleged that he was placed in solitary confinement based on his engagement in any misconduct. He has not asserted that jail officials, correctly or incorrectly, told him or otherwise believed that Plaintiff had committed a disciplinary infraction. Rather, Plaintiff alleges that Defendant had a non-punitive reason for placing him in solitary confinement, because of his disabling mental health issues (about which he does not further elaborate). *Fifth Am. Compl.* [#81] at 6 ("While in custody [Plaintiff] experience[d] mental health issues that became disabling [sic] to him and as a result [he] was placed in solitary confinement."). Plaintiff does not allege that these mental health issues caused him to engage in misbehavior leading to disciplinary action by Defendant or other jail officials. In short, there is no indication in the Fifth Amended Complaint [#81] that Plaintiff was placed in solitary confinement based on any purported misconduct. Thus, the Court finds that

Plaintiff has not asserted or adequately pleaded a procedural due process claim based on confinement for disciplinary purposes.

### ii.    Administrative Purposes

"[J]ail officials are entitled . . . to impose restrictions for administrative purposes without running afoul of *Bell*." *Williamson*, 912 F.3d at 175. "If . . . a restriction imposed by the jail officials is for administrative purposes — which include managerial and security needs — the level of process to which the pretrial detainee is entitled is diminished." *Id.* "In those situations, . . . some level of process must be afforded to the pretrial detainee, even if the process is provided after the restriction has been imposed." *Id.* However, "restraints that 'are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting.'" *Peoples*, 422 F.3d at 1106  (quoting *Bell*, 441 U.S. at 540). For example, in *Peoples*, 422 F.3d at 1107, the Tenth Circuit affirmed dismissal of a pretrial detainee's due process claim arising from his segregation placement because the segregation was not intended as punishment. Specifically, the segregation began due to the jail's lack of bed space in general population and continued because jail officials learned of the detainee's prior plot to escape from his previous pretrial detention facility. *Peoples*, 422 F.3d at 1106-07.

Here, Plaintiff provides insufficient information from which the Court can conclude that his placement and continued confinement in segregation were punitive in nature. First, Plaintiff alleges that Defendant had a non-punitive reason for placing Plaintiff in solitary confinement, because of his disabling mental health issues. *Fifth Am. Compl.* [#81] at 6. "[T]he government may have a legitimate interest in ensuring the safety and

order of the facilities where it houses pretrial detainees." *Blackmon*, 734 F.3d at 1241. "[N]o process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial [including safety] reasons." *Peoples*, 422 F.3d at 1106 (quoting *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002)). Here, Plaintiff's allegations suggest that he was placed in solitary confinement for managerial/safety reasons.

Second, Plaintiff does not assert that the stated reason for placing him in solitary confinement, i.e., that Plaintiff was experiencing serious mental health issues, was pretextual. *See, e.g.*, *Jenkins*, 2023 WL 1784226, at *7 (in finding that the plaintiff had stated an actionable claim, saying: "Although Plaintiff in this case was given an initial explanation for his placement in solitary confinement, . . . [he] alleges that any explanation he was provided ahead of placement in solitary confinement was pretextual[.]"). In fact, Plaintiff specifically alleges that these issues were disabling to him. *Fifth Am. Compl.* [#81] at 6. In other words, he does not contest that his mental health issues were severe enough to warrant his initial placement in solitary confinement.

Third, Plaintiff has not alleged that he had no opportunity to be heard or to otherwise challenge his placement. *See, e.g.*, *Jenkins*, 2023 WL 1784226, at *7 (finding that the plaintiff stated an actionable claim, in part based on the plaintiff's assertion that "he was never given a meaningful opportunity to be heard or challenge his confinement").

Fourth, Plaintiff does not allege that his mental health issues significantly improved during his segregation, meaning there was no longer a reason for him to be confined there. Conversely, he also does not allege that his mental health issues significantly worsened during that time, and thus that he should have been released from that situation based on a medical issue.

As alleged, Plaintiff's situation is distinguishable from other cases where pretrial detainees have been found to have stated a procedural due process claim based on their placements in solitary confinement. For example, in *Meek v. Koonce*, No. 14-cv-01335-MSK-KLM, 2015 WL 4944076, at *5 (D. Colo. Aug. 20, 2015), the plaintiff alleged that, as a pretrial detainee, he was placed in administrative segregation without notice and despite having been "cleared of any wrong doing [sic]." He thus believed that his placement in solitary confinement was a form of punishment. *Meek*, 2015 WL 4944076, at *5. The court stated that, "[b]ecause the analysis turns on the government's intent with regard to the placement, of which [the plaintiff] was never made aware, the [c]ourt finds it is permissible to infer from [the plaintiff's] allegations that the placement was purposeless." *Id.* Thus, the court found that the plaintiff had adequately stated a claim for denial of "procedural due process by being placed in administrative segregation without notice or a hearing." *Id.*

As another example, in *Sessions v. Clements*, No. 14-cv-02406-PAB-KLM, 2016 WL 820978, at *2, 7 (D. Colo. Jan. 21, 2016), *recommendation adopted*, 2016 WL 814715 (D. Colo. Mar. 1, 2016), the plaintiff alleged that, as a pretrial detainee, he was placed in segregation "without any notice of the reason" for nearly nine months, and he believed he was segregated "because of pending criminal charges against him involving sexual assault of a child." Based on those allegations, the court determined that it may "infer . . . that the placement was purposeless or impermissibly imposed as punishment" and concluded that the plaintiff stated an actionable procedural due process claim. *Sessions*, 2016 WL 820978, at *7.

In sum, unlike in *Meek* or *Sessions*, Plaintiff's allegations render the Court unable to infer that he was placed in segregation as punishment or in the absence of any

legitimate governmental objective. *See Blackmon*, 734 F.3d at 1241. However, the Court emphasizes how meager Plaintiff's allegations are with respect to this claim, and that he *may* possess facts which he could allege to make amendment appropriate. Although the Court cannot find from the Fifth Amended Complaint [#81] that Plaintiff has stated a due process claim here, possible instances exist where placing a mentally-ill pretrial detainee in solitary confinement for approximately seventeen months could rise to a procedural due process violation, such as, by way of example only, if he had no opportunity to be heard or to challenge the confinement, if his solitary confinement were not periodically reviewed, if his mental health issues markedly improved or deteriorated, or if the reasons for placing him in solitary confinement were alleged to be pretextual.

Accordingly, the Court **recommends** that Plaintiff's Claim Four, to the extent construed as a due process claim, be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### 4.   Claim Seven: Failure to Intervene

Under Claim Seven, Plaintiff asserts a violation of his civil rights by Defendant Diggins based on a failure to intervene in the events underlying the other claims. *Fifth Am. Compl.* [#81] at 9. This claim appears to be a supervisory liability claim, as Plaintiff alleges that Defendant Diggins was "or should have been aware of all matters in this complaint and at the time of those inciden[ts] but fail[ed] to intervene." *Id.*

However, before addressing supervisory liability, to the extent this may not be a supervisory liability claim, the Court notes that "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). Thus, "even when a jail employee does not himself

use excessive force, he may be liable for failure to intervene when he is present at the scene and . . . fails to take reasonable steps to protect the victim of another officer's use of excessive force." *Scriven v. Corby*, No. 5:20-CV-03110-JAR-KKG, 2021 WL 2222682, at *10 (D. Kan. June 2, 2021) (internal quotation marks omitted) (quoting *Mascorro v. Billings*, 656 F3d. 1198, 1204 n.5 (10th Cir. 2011)). To state a failure to intervene claim, the plaintiff must adequately allege that the defendant-officer "(1) observed a constitutional violation and (2) had a realistic opportunity to intervene." *Mullins v. City of Colorado Springs*, 575 F. Supp. 3d 1360, 1372 (D. Colo. 2021) (citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)). Allegations of officers' "mere presence at the scene and their failure to stop any of the alleged constitutional violations committed by their fellow officers" is insufficient to state a claim for failure to intervene. *Bark v. Chacon*, 504 F. App'x 741, 746 (10th Cir. 2012)). Here, the Fifth Amended Complaint [#81] contains no allegations that Defendant Diggins was actually present at the time of the October 30, 2020 incident, and therefore, to the extent Plaintiff asserts a failure-to-intervene claim that is not a supervisory liability claim, his claim here fails.

To succeed on a claim of supervisory liability, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1999)) (internal quotation marks omitted). The Tenth Circuit Court of Appeals has further clarified that a plaintiff alleging supervisory liability must plead that "(1) the defendant promulgated,

created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). In other words, an "affirmative link" must exist between the subordinates' alleged unconstitutional acts and the express or implied adoption of a plan or policy. *Id.* at 1200-01. Here, as discussed above, Plaintiff has not adequately alleged a constitutional violation, and thus there can be no supervisory liability for those purported claims. Further, even if he had, he has not alleged any policy as required by *Dodds*.

Accordingly, the Court **recommends** that Plaintiff's Claim Seven be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

## F.    Claim Ten: Municipal Liability

Plaintiff's Claim Ten is asserted against the City and County of Denver. *Fifth Am. Compl.* [#81] at 10. The Court also construes the Fifth Amended Complaint [#81] as asserting claims against Defendant Diggins in his official capacity, given that Plaintiff did not specify whether the claims were asserted against him in his individual or official capacity as Sheriff. *See* [#81] at 3. Suing an official in his official capacity is the same as asserting a claim against the county or municipality represented by the official. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Here, Defendant argues that Plaintiff has not adequately pleaded a municipal liability claim, also known as a *Monell* claim, with respect to any of his asserted constitutional violations. *Motion* [#82] at 17-18.

A municipality "is a 'person' subject to § 1983 liability." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "Municipal liability requires an underlying constitutional violation." *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023). "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington County*, 983 F.3d 1166, 1191 (10th Cir. 2020). However, "[b]ecause municipalities act through officers, ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation." *Id.*

In addition to the requirement that there be a constitutional violation, a plaintiff must satisfy three other elements to succeed on a municipal liability claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, an official policy or custom may include:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City and County of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Regarding the second element, i.e., causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right."

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotation marks omitted). The policy or custom must be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997).

Regarding the third element, "[a] local government policymaker is deliberately indifferent when he 'deliberately' or 'consciously' fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). "In the municipal liability context, deliberate indifference is an objective standard that may be satisfied if the risk is so obvious that the official should have known of it." *Buchanan*, 2023 WL 6997404, at *8 (internal quotation marks omitted) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998)).

Here, in addition to failing to adequately state a claim regarding any underlying asserted constitutional violation, the Court finds that Plaintiff has not adequately identified a specific policy or custom, that such a policy or custom was the moving force behind his asserted constitutional injuries, or that the maker of any such policy was deliberately indifferent. Rather, Plaintiff merely alleges: "I am also suing Denver County because it should ha[ve] known that all the above [asserted constitutional violations] were occurring because I had exhausted all my remedies and it is well known that notice to agen[t] is notice of Principal and notice Principal is notice to agent; Denver County kn[e]w what was happening but fail[ed] to intervene." *Fifth Am. Compl.* [#81] at 10. This statement is insufficient to state a municipal liability claim.

Accordingly, the Court **recommends** that Plaintiff's Claim Ten be **dismissed without prejudice**. *See Reynoldson*, 907 F.2d at 126.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#82] be **GRANTED** and that Plaintiff's claims be **DISMISSED** as outlined above.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: August 27, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge